**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD FRASER d/b/a R.A. Fraser | : | |
| Agency; Deborah Fraser | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | 98-CV-6726 |
| | : | |
| NATIONWIDE MUTUAL INSURANCE | : | |
| CO., et al., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

Anita B. Brody, J.                                                    August     , 2004


        Subsequent to the termination of his contract with Nationwide Mutual Insurance Company,

Richard Fraser, d/b/a R.A. Fraser Agency ("Fraser") and his wife, Deborah Fraser, brought this

action against Nationwide, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance

Company, Nationwide General Insurance Company, Nationwide Property & Casualty Insurance

Company, Nationwide Variable Life Insurance Company, and Colonial Insurance Company of

Wisconsin (hereinafter referred to collectively as "Nationwide"), asserting various theories of

recovery pursuant to both state and federal law.  After I ruled, among other things, that the forfeiture-

for-competition clause contained in the Agent's Agreement ("Agreement") between Fraser and

Nationwide was valid and enforceable, Fraser appealed my ruling to the Third Circuit Court of

Appeals.  On December 10, 2003, the Third Circuit affirmed my ruling on all but the forfeiture-for-

competition and discovery violations issues.  With respect to the forfeiture-for-competition

1

provision, the Third Circuit remanded the case "for reconsideration in light of new case law from the Pennsylvania Supreme Court." Fraser v. Nationwide, 352 F.3d 107, 109 (3d Cir. 2004). In that regard, the Third Circuit specifically directed me as follows:

> Because the District Court did not have the benefit of Hess [v. Gebhard & Co., Inc., 808 A.2d 912 (Pa. 2002)], we remand Fraser's forfeiture-for-competition claim to it to apply the Hess analysis. On remand, the Court will need to balance the interests Nationwide seeks to protect (if any) against the harm to Fraser. In so doing, because the record is silent as to the precise amount of deferred compensation that the clause would require Fraser to forfeit as well as the nature of Nationwide's protectible business interests, the Court will need to make additional factual findings.

Fraser, 352 F.3d at 116. The Third Circuit further noted that "[w]hile Hess involved a quite different situation [than the facts presented in Fraser] . . . the decision was written in broad terms and thus guides our analysis." Id. at 116. I read this instruction as a request that I reexamine my analysis of the forfeiture-for-competition provision in light of the Hess opinion. The Third Circuit also remanded the case for consideration of Fraser's discovery sanctions claim, which had not been previously addressed. For the reasons that follow, I find that the forfeiture-for-competition provision in the Agreement is valid and enforceable. Additionally, I deny plaintiffs' motion for discovery sanctions.

## I. Factual Background and Procedural Posture

The instant dispute stems from Nationwide's September 2, 1998 termination of Richard Fraser's Agent's Agreement ("Agreement"). Prior to his termination, Fraser was an independent insurance agent for Nationwide. Because the factual background of this dispute is detailed in my prior opinion, Fraser v. Nationwide, 135 F. Supp. 2d 623 (E.D. Pa. 2001), as well as the opinion

issued by the Third Circuit on appeal, Fraser v. Nationwide, 352 F.3d 107 (3d Cir. 2004), I will only recount the most pertinent details here.

The Agreement between Fraser and Nationwide provided that Fraser would sell insurance policies as an independent contractor for Nationwide on an exclusive basis. Fraser v. Nationwide, 352 F.3d 107, 109 (3d Cir. 2004). The Agreement also provided that the relationship was terminable at will by either party. Id. Furthermore, under paragraph 11 of the Agreement, entitled "Agency Security Compensation," the Agreement provided for payment of earned deferred compensation upon "qualified cancellation" of the agreement. Fraser, 135 F. Supp. 2d at 628; (Exhibit P-1 (Agent's Agreement) (June 22, 2004).) Deferred compensation was one component of the broader "Agent's Security Compensation Plan ("ASCP"), which also included an "Extended Earnings" program. In the "Q & A" booklet regarding the ASCP, the ASCP is defined as "a comprehensive security package designed for the progressive, growth-oriented agent." (Exhibit B of Pl.'s Letter Br. to Third Circuit.) Listed as one of the three "objectives of the ASCP" is "to reward those agents choosing not to compete when they leave the Companies." (Id.) "Qualified cancellation" was defined in the Agreement as cancellation for any reason, "unless you have induced or attempted to induce, either directly or indirectly, policyholders to lapse, cancel, or replace any insurance contract in force with [Nationwide]." (Exhibit P-1 (Agent's Agreement) (June 22, 2004)); Fraser, 135 F. Supp. 2d at 628 n.5. Paragraph 11(a) of the Agreement provided that:

> For each full calendar year you act as an agent for the Companies, beginning in the year you complete your fifth year as an agent . . . the Companies will credit to your account, as Deferred Compensation Incentive Credits, the following percentage of your original and renewal service fee earnings . . . [followed by a listing of the applicable percentages correlating to amount of earnings]

3

(Exhibit P-1 (Agent's Agreement) (June 22, 2004).)

Additionally, paragraph 11(f) of the Agent's Agreement contained a forfeiture-for-competition provision, whereby an agent would forfeit deferred compensation by becoming associated with another insurance business in a twenty-five mile radius within one year of cancellation of the Agent's Agreement. Specifically, paragraph 11(f) provided that:

> All liability of [Nationwide] . . . for Agency Security Compensation provided for in paragraph 11 and its subparagraphs shall cease and terminate in the event any one or more of the following shall occur:
>
>> (1) You either directly or indirectly, by and for yourself or as an agent for another, or through others as their agent, engage in or be licensed as an agent, solicitor, representative, or broker or in anyway be connected with the fire, casualty, health, or life insurance business, within one year following cancellation within a 25 mile radius of your business location at that time.

(Exhibit P-1 (Agent's Agreement) (June 22, 2004).). Fraser alleges that, due to financial hardship, he sought work with another insurance company within a 25 mile radius of Nationwide ten months after leaving Nationwide and cancelling his agreement. Fraser v. Nationwide, 135 F. Supp. 2d at 647. Because Fraser did not postpone his decision to work for another employer from ten months to twelve months, he forfeited his deferred compensation.[1]

In my previous opinion, Fraser v. Nationwide, 135 F. Supp. 2d 623 (E.D. Pa. 2001), I held that the terms of the provision were enforceable. On appeal to the Third Circuit, Fraser contested this ruling. Fraser, 352 F.3d at 115. In the context of remanding the case, the Third Circuit noted

---

[1] I held a hearing on June 22, 2004, at which counsel were directed to address, *inter alia*, the amount of deferred compensation. The parties contested the amount of deferred compensation at the hearing: defendants argued that the forfeited amount was $222, 401.56; plaintiffs contended that the amount was $364,000.00. (Record at 10, 21 (June 22, 2004).) Neither party presented any evidence.

that subsequent to my ruling in this case, the Pennsylvania Supreme Court issued an opinion, Hess v. Gebhard & Co., Inc., 808 A.2d 912 (Pa. 2002), which, while involving a very different factual scenario, "was written in broad terms and thus guides our analysis." Fraser, 352 F.3d at 116. The Third Circuit, therefore, remanded the case to me to apply Hess to Fraser's forfeiture-for-competition claim. I will begin, therefore, by addressing Fraser's forfeiture-for-competition claim, followed by an analysis of Fraser's motion for sanctions, which has not been previously adjudicated.

## II.  Discussion

### A.  Forfeiture-for-Competition Provision and Hess v. Gebhard

In Hess, an insurance company that had previously sold its business sought to enforce a former employee's restrictive covenant not to compete even though the company had no ongoing operating interest in the insurance business. In addition to the former employer, the purchaser of the insurance company also sought to enforce the former employee's restrictive covenant. Addressing an issue of first impression, the Pennsylvania Supreme Court held that a "restrictive covenant not to compete, contained in an employment agreement, is not assignable to [a] purchasing business entity, in the absence of a specific assignability provision, where the covenant is included in a sale of assets." Hess, 808 A.2d at 922. The purchasing company, therefore, could not enforce the covenant. Moreover, the court held that because the original employer had sold its insurance business, it could not establish the threshold element of a protectible business interest and therefore also could not enforce the non-compete clause. Id. at 924. In sum, neither the purchased company nor the purchasing company could enforce the non-compete clause at issue.

As noted by the Third Circuit in Fraser, the Pennsylvania Supreme Court wrote in broad

terms in <u>Hess</u>.  Specifically, the Pennsylvania Supreme Court began its analysis by recognizing that while "[r]estrictive covenants, of which non-disclosure and non-competition covenants are the most frequently utilized, are commonly relied upon by employers to shield their protectible business interests . . . restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living." <u>Id.</u> at 917.

Additionally, from a historical perspective, the Court noted that "[g]enerally, American courts insist that an employer may not enforce a post-employment restriction on a former employee simply to eliminate competition per se; the employer must establish a legitimate business interest to be protected." <u>Id.</u> at 918.  A necessary prerequisite to the enforcement of a non-competition covenant, therefore, is the existence of a protectible business interest.  <u>Id.</u> at 920.   In this regard, the Pennsylvania Supreme Court noted "trade secrets, confidential information, good will, and unique or extraordinary skills" as examples of legitimate business interests worthy of protection through non-competition covenants and "eliminating or repressing competition . . . so that the employer can gain an economic advantage" as an illegitimate business interest unworthy of protection. <u>Id.</u> at 920-21.  In other words, "pure financial gain at the expense of restricted competition is insufficient to constitute a protectible business interest." <u>Id.</u> at 923.   Guided by these overarching principles, the <u>Hess</u> court held that in determining the enforceability of a "non-competition covenant . . . the court [will] balance[] the employer's protectible business interests against the interest of the employee in earning a living in his or her chosen profession, trade or occupation, and then balance[] the result against the interest of the public."[2] <u>Id.</u> at 920.

---

[2]Because the Pennsylvania Supreme Court held in <u>Hess</u> that neither the original insurance company nor the purchasing company could enforce the non-compete agreement, the Court did not actually apply the balancing test it set out.   The <u>Hess</u> decision, however, does not suggest

In addition to commenting on the enforceability of restrictive covenants, in <u>Hess</u>, the Pennsylvania Supreme Court also elucidated a general conception of the underlying foundation of restrictive covenants in employment contracts.  In that regard, the Pennsylvania Supreme Court stated that:

> [T]he employment contract, of which the covenant is a part, is personal to the performance of both the employer and the employee, the touchstone of which is the trust that each has in the other.  The fact that an individual may have confidence in the character and personality of one employer does not mean that the employee would be willing to suffer a restraint on his employment for the benefit of a stranger to the original undertaking. . . .  In reaching th[e] conclusion [that restrictive covenants are not assignable] we find that personal characteristics of the employment contract permeate the entire transaction.

<u>Id.</u> at 922.  Earlier in the opinion, and in a similar vein, the <u>Hess</u> court cited a decision from the Eastern District of Virginia, <u>Reynolds & Reynolds v. Hardee</u>, 932 F. Supp. 149 (E.D. Va. 1996), as "persuasive."  In <u>Hardee</u>, the district court, applying Virginia law, noted that the employee placed

---

that this balancing test supercedes any existing Pennsylvania law.  <u>See</u> <u>Zimmerman v. Unemployment Compensation Bd. of Review</u>, 836 A.2d 1074 (Pa. Commw. Ct. 2003) (noting that in <u>Hess</u>, the Pennsylvania Supreme Court recounted the history of non-compete agreements, including the advent of the balancing test, which "has been applied for centuries and is still employed by courts today.").  In fact, in <u>Hess</u>, the Pennsylvania Supreme Court reiterated that restrictive covenants are enforceable if they are: (1) incident to an employment relationship between the parties; (2) the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and (3) the restrictions imposed are reasonably limited in duration and geographic extent.  <u>Hess</u>, 808 A.2d at 917 (citing <u>Sidco Paper Co. v. Aaron</u>, 351 A.2d 250 (Pa. 1976)).  <u>Hess</u> did, however, highlight the existence of a threshold prerequisite to the enforcement of a non-compete agreement, and, by implication, a restrictive covenant generally:

> Fundamental . . . to any enforcement determination is the threshold assessment that there is a legitimate interest of the employer to be protected as a condition precedent to the validity of a covenant not to compete.

<u>Id.</u>, at 920.  <u>Hess</u> also clarified the types of interests which qualify as protectible business interests.  <u>Id</u>.

considerable trust in the employer by agreeing to the non-compete clause, namely trusting that the employer would not fire him and then invoke the covenant not to compete. Hardee, cited in Hess, 808 A.2d at 919.

In addition to Hess, an older Pennsylvania Supreme Court case is also on point. In Garner v. Girard Trust Bank, 275 A.2d 359 (Pa. 1971), the Pennsylvania Supreme Court upheld a non-competition clause which allowed a pension forfeiture. In Garner, the plaintiff had been a member of an employer-created profit-sharing pension trust before leaving the employ of defendant company. Under the terms of the pension trust, a former member would forfeit his unpaid vested interest in the pension if he competed with the employer within two years of separation from the employer. Garner, 275 A.2d at 360. The Pennsylvania Supreme Court began by recognizing that the plaintiff "had a contractual right to enforce the plan according to its terms. Id. at 361. Furthermore, even though, under the terms of the plan, the committee (a group appointed by the Board of Directors) had sole discretion to determine a forfeiture under the non-compete agreement, the committee's decisions were subject to judicial review for good faith and reasonableness. Id. Applying that standard, the Pennsylvania Supreme Court ultimately concluded that there was no evidence that the committee had acted arbitrarily and allowed the forfeiture. Id. at 362. Notably, Garner is bereft of any reference to restrictive covenants or balancing tests, but rather analyzes the forfeiture provision under general contract principles.

With the guidance provided by the Pennsylvania Supreme Court in Garner and Hess, it is my view that the Pennsylvania Supreme Court would find Garner directly applicable to the facts of this case. Here, as in Garner, Fraser does not dispute that he entered into competition with Nationwide within a 25 mile radius within one year of termination. Also, unlike the plaintiff in Garner, Fraser

does not allege that Nationwide acted arbitrarily or in bad faith in refusing to pay him deferred compensation; rather, Fraser argues that the provision itself is unenforceable under principles applicable to restrictive covenants.  I find, however, that the failure of this particular forfeiture-for-competition provision to implicate the broad concerns expressed in <u>Hess</u>, highlights the inapplicability of any type of balancing test to the provision at hand.

To illustrate the inapplicability of <u>Hess</u> to this case, I offer the following analysis.  Under the <u>Hess</u> test for restrictive covenants, the court must balance "the employer's protectible business interests," "the interest of the employee in earning a living in his or her chosen profession," and "the interest of the public."  <u>Hess</u>, 808 A.2d at 920.  Unlike the kind of restrictive covenant implicated in <u>Hess</u>, which was a standard non-compete clause, Fraser's interest in earning a living, an essential component to the <u>Hess</u> balancing test, is only tangentially implicated by the forfeiture-for-competition provision.  The forfeiture-for-competition provision in Fraser's Agreement was more akin to an incentive program than a non-compete clause.  In essence, and as stated in Nationwide's brochure regarding the ASCP, Nationwide offered a bonus to any employee who had a qualified cancellation and *chose* not to compete within 25 miles for one year.  (<u>See</u> Exhibit B of Pl.'s Letter Br. to Third Circuit (stating that one of the objectives of the ASCP was "to reward those agents choosing not to compete when they leave the Companies").)  Upon termination of his contract with Nationwide, Fraser faced two options:  he could choose to compete and consequently forfeit his deferred compensation; or he could choose not to compete and receive his deferred compensation.  It was his decision.  Viewed under one light, Nationwide's deferred compensation plan offered Fraser an insurance program whereby if Fraser chose not to compete for a year, or if perhaps he couldn't find another position, he would receive a sum potentially as large as $364,000.00.

Nationwide did not impede Fraser from working for another company by threat of injunction–rather, Fraser was simply faced with the decision of whether or not to disqualify himself from a monetary benefit.  In all likelihood, Fraser made that decision as any rational actor would – by weighing the benefits and losses attributable to each option.  Furthermore, because the provision was essentially one for a conditional monetary benefit, the "touchstone . . . of trust" between the employee and employer to which <u>Hess</u> refers is not relevant.  For these reasons, I find that, in consideration of <u>Hess</u>, the forfeiture-for-competition provision in the Agreement between Fraser and Nationwide is valid and enforceable under <u>Garner</u>.

Alternatively, even assuming, *arguendo*, that the forfeiture-for-competition provision in this case should be analyzed as a restrictive covenant such that <u>Hess</u> is applicable, I would still find that this particular provision is valid and enforceable.  As previously stated, in <u>Hess</u>, the Pennsylvania Supreme Court reiterated that restrictive covenants are enforceable if they are: (1) incident to an employment relationship between the parties; (2) the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and (3) the restrictions imposed are reasonably limited in duration and geographic extent.  <u>Hess</u>, 808 A.2d at 917 (citing <u>Sidco Paper Co. v. Aaron</u>, 351 A.2d 250 (Pa. 1976)).  Additionally, <u>Hess</u> highlighted the existence of a threshold prerequisite to the enforcement of a non-compete agreement, namely a protectible business interest.  <u>Id.</u> at 920.  In doing so, the Pennsylvania Supreme Court also clarified that "pure financial gain at the expense of restricted competition is insufficient to constitute a protectible business interest."  <u>Id.</u> at 923.

With respect to the forfeiture-for-competition provision in Fraser's Agreement, which constitutes one part of the general ASCP, Nationwide's protectible interest is the stake Nationwide

has in providing an incentive to dissuade former employees from competing with Nationwide for a limited period of time after leaving Nationwide's employ. Rather than "pure financial gain at the expense of restricted competition," the forfeiture-for-competition provision does not restrict competition in the sense that it carries the threat of injunction, but rather offers a monetary benefit upon compliance with its terms. Furthermore, the provision at issue satisfies the three requirements for the enforceability of restrictive covenants stated in <u>Hess</u>. First, the provision is ancillary to the Agent's agreement, the main purpose of which was to establish the independent contractor relationship between Fraser and Nationwide. Second, the restrictions imposed are reasonably necessary for the protection of the employer. The reasonableness of this particular forfeiture-for-competition provision is highlighted by its conditional nature: Fraser could either abide by the conditions required to receive the deferred compensation or not, it was his choice. In that regard, it would be overly simplistic to state that the provision operated to Fraser's detriment in the form of $364,000.00[3] of forfeited deferred compensation. It is more probable that Fraser recognized the loss of $364,000 as the opportunity cost of accepting other employment, and chose to compete because it was more economically advantageous to do so. Moreover, Nationwide had a legitimate interest in offering a conditional incentive program. Finally, the restriction on competition is reasonably limited to one year following cancellation of the agreement and within a 25 mile radius of Fraser's business location at the time of cancellation.

### B. Fraser's Motion for Sanctions

Also before me is Fraser's motion for sanctions pursuant to Federal Rule of Civil Procedure

---

[3]I am assuming, for purposes of this analysis, that plaintiffs' contention regarding the amount of forfeited deferred compensation is accurate.

37, filed on December 21, 2000.  According to Fraser, Nationwide willfully violated two discovery

orders, one issued on June 28, 1999 requiring Nationwide to serve full and complete answers to

plaintiffs' first set of written discovery, and one issued on August 14, 2000, requiring Nationwide

to likewise respond to plaintiffs' second set of written discovery.  (Pl.'s Mot. for Sanctions at 1.)

As result of these alleged violations, Fraser claims $48,000.00 in damages, consisting of unnecessary

discovery costs and motion practice.  (Id.)  Fraser also asks that I impose a $1,000,000 fine upon

Nationwide.  (Id. at 28.)

    Federal Rule of Civil Procedure 37(b) provides, in pertinent part:

    (2) Sanctions by Court in Which Action is Pending.  If a party . . .  fails to obey an
    order to provide or permit discovery . . .  the court in which the action is pending may
    make such orders in regard to the failure as are just . . . . in addition thereto, the court
    shall require the party failing to obey the order or the attorney advising that party or
    both to pay the reasonable expenses, including attorney's fees, caused by the failure,
    unless the court finds that the failure was substantially justified or that other
    circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2).  Upon consideration of Fraser's motion and Nationwide's response, as

well as  my own recollection of the discovery process in this case, I find Nationwide's arguments

in opposition to imposition of sanctions to be persuasive.  Specifically, I find that Nationwide

correctly states that in a complex matter, discovery, which in this case included thousands of

pages of documents and a multitude of witnesses, is a painstaking and lengthy process.

Although, admittedly, defendants were occasionally "somewhat slow" in their responses, what

occurred in this case was attributable, in large degree, to the nature of the discovery process in a

complex case.  (See Def.'s Resp. at 14 (noting that "on occasion, the defendants have been

somewhat slow").)  An award of expenses to Fraser, therefore, would be unjust.

## II.  Conclusion

_____For the reasons stated, I find the forfeiture-for-competition provision valid and

enforceable.  Furthermore, I deny Fraser's motion for sanctions pursuant to Federal Rule of Civil

Procedure 37 as meritless.

**ORDER**

AND NOW, this _____ day of August 2004, it is **ORDERED** that, following the

remand from the Third Circuit Court of Appeals (Fraser v. Nationwide, 352 F.3d 107, 109 (3d

Cir. 2004)) directing me to reconsider my previous ruling on the forfeiture-for-competition

provision, and having duly reconsidered that ruling, defendants' motion for summary judgment is

**GRANTED**.  It is further **ORDERED** that plaintiff's motion for sanctions (Docket Entry # 90)

is **DENIED**.


_____
ANITA B. BRODY, J.


_____Copies **FAXED** on            to:_____Copies **MAILED** on        to:


O:\ABB\Fraser Final Opinion.wpd_____

14